**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Sito Pantoja<br>    1101 South Arlington Ridge Road Apt 409<br>    Arlington, VA 22202-1924 )<br><br>                        Plaintiff, )<br><br>Maria Tusa<br>    13210 Clover Creek Point Lane,<br>    Atascocita, TX 77346 )<br><br>                        Plaintiff, )<br><br>Edmund A. Walsh, III<br>    52 Beach Road<br>    Winthrop, MA 02152 )<br><br>                        Plaintiff, )<br>    vs. )<br><br>Robert Martinez<br>    7817 Bursey Court<br>    N Richland Hills, TX 76182 )<br><br>                        Defendant, )<br><br>Dora Cervantes<br>    1501 N Highview Lane #104<br>    Alexandria, VA 22311 )<br><br>                        Defendant, )<br><br>Gary R. Allen<br>    620 Coolidge Drive Suite 130<br>    Folsom, CA 95630 )<br><br>                        Defendant, )<br><br>Mark Blondin<br>    12615 2nd Street, SE<br>    Lake Stevens, WA 98258. )<br><br>                        Defendant, ) | Civil Action No. 1:21-cv-2197 |

1

Rickey Wallace                                        )
    2355 N. Highway 360 #1411                    )
    Grand Prairie, TX 75050                      )
                                                 )
        Defendant,                          )
                                                 )
                                                 )
Brian M. Bryant                                       )
    9340 Megatha Lane                            )
    Owings, MD 20736.                            )
                                                 )
        Defendant,                          )
                                                 )
Steven M. Galloway                                    )
    1901 South Meyers Road                       )
    Oakbrook Terrace, IL 60181                   )
                                                 )
        Defendant,                          )
                                                 )
Richard Johnsen                                       )
    2024 Land End Loop                           )
    Roseville, CA 95747                          )
                                                 )
        Defendant,                          )
                                                 )
The International Association of Machinists (IAM) )
AFL-CIO                                               )
    9000 Machinists Place,                       )
    Upper Marlboro, MD 20772                     )
                                                 )
        Defendant.                          )

## VERIFIED COMPLAINT

### INTRODUCTION

1) Plaintiff Sito Pantoja has been a member in good standing of the International Association of Machinists and Aerospace Workers ("IAM") since 1977 and an elected Vice President of Transportation for the IAM since 2012. However, because Pantoja spoke out against the

2

corruption of the incumbent General Secretary Treasurer (GST) and supported her opponent in the recent election of international officers held in early 2021, the individually named Defendants have closed his Washington, D.C. office; demoted and reassigned his Chief of Staff for alleged disloyalty and threatened to administer loyalty interrogations of the rest of his staff to demand total support of the incumbent GST as a condition of continued employment; removed Pantoja from his Department and its members, stripped him of his Vice Presidency of the International Transportation Federation and replaced him as the IAM designated member of the United Airlines Board of Directors. Pantoja was further punished for exercising his right of free speech by being assigned to his home on June 1, 2021, and, forbidden to return to his or any other office in IAM headquarters without prior permission. Defendants have also prevented him from attending IAM Executive Council meetings which is his right and duty to participate in pursuant to the IAM Constitution. In addition, on June 17, 2021, the Defendant members of the IAM Executive Council adopted a new mandatory age 65 retirement rule, which will bar Pantoja from serving in office past his 65th birthday on March 28, 2022, retroactively cutting short the four-year term of office to which he was most recently re-elected.

2) Plaintiff Pantoja and Plaintiffs Tusa and Walsh sue for reinstatement of Pantoja to his position as the IAM's Transportation Department Vice-President, from which he has been summarily and arbitrarily removed by Defendant IAM General President Robert Martinez with the approval of Defendant members of the Executive Council and reassigned to "make-work" apprenticeship research projects, to be performed from home, for currently non-existent potential future members. Martinez and the named Defendants took these steps based entirely upon their own personal political self-interests, and not because of any nonperformance or

neglect of duties by Pantoja, who, to the contrary, has been generously praised by prominent industry commentators as one of the finest contract negotiators in the industry.

3) Plaintiff Tusa is a member in good standing of Local Lodge 2198 in Houston, Texas. Plaintiff Walsh is a member in good standing of Local Lodge 1726 in Boston, Massachusetts. These members bring this action to restore their right to be represented by General Vice President, Plaintiff Sito Pantoja, who they voted for and who was duly elected as General Vice President, to lead the IAM's Transportation Department, in an officer election in which the only challenged election was for IAM General Secretary-Treasurer.

4) The Defendants' actions constitute a deliberate and purposeful effort to exclude Pantoja, his staff, and supporters from all substantive Union functions in order to remove dissenters from the leadership. It is also an attempt to discourage officers and staff from raising and addressing legitimate concerns about how membership money and assets are spent as well as to discourage members from raising questions about how their money is being handled and demanding that their representatives inquire into such matters and address such concerns. These actions are designed to punish and discourage Pantoja's exercise of free speech and to chill the exercise of free speech rights by IAM members.

## I.    JURISDICTION

5) This court has jurisdiction over the subject matter of this civil action pursuant to §101(a)(1) and (2) § 102, and § 201(c) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411, 412, and 431, because all Plaintiffs are members in good standing of the IAM.

## II.    VENUE

6) Venue lies in the United States District Court for the District of Columbia because the IAM maintains a legislative office located in in the District of Columbia at 423 New Jersey Avenue SE, and at all times material to this action maintained an office at AFL-CIO headquarters at 815 Black Lives Matter Plaza NW, has members who work and are represented by the IAM in this judicial district, and otherwise does business here on an ongoing basis.

## III.    PARTIES

7) Plaintiff Sito Pantoja is a member in good standing of the IAM which represents multiple crafts or classes in the airline and rail industries throughout the United States. His address is 1101 South Arlington Ridge Road Apt 409, Arlington, VA 22202-1924.

8) Plaintiff Maria Tusa is a member in good standing of IAM Local Lodge 2198. Her address is 13210 Clover Creek Point Lane, Atascocita, TX 77346.

9) Plaintiff Edmund A. Walsh, III is an IAM member in good standing of Local Lodge 1726. His address is: 52 Beach Road, Winthrop, MA 02152.

10) Defendant Robert Martinez is being sued in his individual and official capacities. He is the International President of the IAM and a member of the IAM Executive Council, which is the highest governing body of the Union  between Grand Lodge Conventions. His home address is 7817 Bursey Ct. N Richland Hills, TX 76182. His office address is 9000 Machinists Pl, Upper Marlboro, MD 20772.

11) Defendant Dora Cervantes is being sued in her individual and official capacities. She is the General Secretary Treasurer of the IAM and a member of the IAM Executive Council. Her home address is 1501 N Highview Lane #104 Alexandria, VA 22311.  Her office address is 9000 Machinists Place, Upper Marlboro, MD 20772.

12) Defendant Gary R. Allen is being sued in his individual and official capacities. He is a General Vice President of the IAM and a member of the IAM Executive Council. His address is 620 Coolidge Drive STE 130 Folsom, CA 95630. His office is at1361 Haddington Drive Folsom, CA 95630.

13) Defendant Mark Blondin is being sued in his individual and official capacities. He is a General Vice President of the IAM and a member of the IAM Executive Council. His address is 12615 2nd Street, SE Lake Stevens, WA 98258. His office address is 2136 W. Mukilteo Blvd. Everett, WA 98203-1518.

14) Defendant Rickey Wallace is being sued in his individual and official capacities. He is a General Vice President and a member of the IAM Executive Council. His address is 2355 N. Highway 360 #1411 Grand Prairie, TX 75050.

15) Defendant Brian M. Bryant is being sued in his individual and official capacities. He is a General Vice President of the IAM and a member of the IAM Executive Council. His address is 9340 Megatha Lane Owings, MD 20736. His office address is 9000 Machinists Pl, Upper Marlboro, MD 20772.

16) Defendant Steven M. Galloway is being sued in his individual and official capacities. He is a General Vice President of the IAM and a member of the IAM Executive Council. His office address is 1901 South Meyers Rd. Oakbrook Terrace, IL 60181.

17) Defendant Richard Johnsen is being sued in his individual and official capacities. He is the recently appointed Chief of Staff to the International President of the IAM who, allow unelected, replaced Plaintiff Pantoja as head of the IAM Transportation Department.  His address is 2024 Land End Loop Roseville, CA 95747. His office address is 9000 Machinists Pl, Upper Marlboro, MD 20772.

18) Defendant IAM is a labor organization as that term is defined in § 2(5) of the LMRA, 29 U.S.C. § 152(5). The principal office of the IAM is 9000 Machinists Pl, Upper Marlboro, MD 20772.

## IV. STATEMENT OF FACTS

*Plaintiff Sito Pantoja's Background and Union Service*

19) Plaintiff Sito Pantoja (hereinafter Pantoja) served as General Vice-President Transportation of the IAM since January 2012 until he was removed and reassigned on June 1, 2021, in reprisal for his support for the candidacy of a challenger to the incumbent General Secretary-Treasurer, whom he believed to be corrupt.

20) Pantoja first became an IAM member when he was hired as an aircraft mechanic by Trans World Airways in New York in 1977 and joined IAM Local 1056, which represented (among other groups) Trans World Airways mechanics. He served as a Shop Steward and in various other local offices before being appointed as a full time IAM Transportation Department Special Representative in 1999, and Grand Lodge Representative thereafter.

21) Pantoja was promoted to Transportation Department Chief of Staff to then General Vice President-Transportation Robert Roach in 2005. In 2012, when Roach became the IAM General Secretary-Treasurer, Pantoja was elected General Vice President ("GVP"-Transportation"). Since becoming GVP-Transportation and until he was removed, Pantoja was responsible for administering over 150 collective bargaining agreements in the rail and airline industries. He was also the chief spokesperson for the IAM in negotiations with a variety of major carriers, including American Airlines, United Airlines, Southwest Airlines, Amtrak, and the national rail freight railroads. His abilities in negotiations led to many industry leading contracts which were overwhelmingly ratified by IAM members. His responsibilities also entailed chairing the IAM Transportation Conference where he spoke to and took questions

from IAM members as well as attending and speaking at all conventions and conferences of the three District Lodges, and visiting with IAM members and listening to their concerns at airports and on the hanger and shop floors. These critical interactions between Pantoja and the IAM membership has now been terminated by Defendants.

22) That same year he became GVP-Transportation, Pantoja was also elected to serve on the Executive Board of the International Transportation Workers' Federation (ITF) headquartered in London. The ITF is a global federation of transportation unions representing millions of transport workers around the world. In 2016 he became the IAM designated member of the United Airlines Board of Directors.

*Structure of the Defendant IAM*

23) The International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") is a labor organization which represents employees who work in the transportation, aerospace, and automotive industries, among others. The union has approximately 325,000 active members with nearly 100,000 employed in the transportation industries. The IAM provides representation through three different levels of organization: Local Lodges, District Lodges and the Grand Lodge.

24) Local Lodges typically have a specific geographic jurisdiction and represent all members who work within that location. Local Lodges provide the first line of representation for union members in their dealings with the company. There are over 800 Local Lodges within the IAM

25) District Lodges are the intermediate level organizations within the union, with which local lodges are affiliated based on the employer of their members. There are three District Lodges within the Transportation Department. The largest is District Lodge 141 headquartered in Chicago which represents employees of American, United and a variety of other airlines. The

second largest is IAM District Lodge 142 located in Kansas City, MO which represents employees at Southwest Airlines, mechanics at American Airlines and those of several foreign and regional air carriers. District Lodge 19 represents freight and passenger railroad members throughout the United States and is headquartered in Denver, Colorado. The District Lodges are headed by an elected President and Directing General Chair, a Secretary-Treasurer and several Assistant General Chairs.

26) The IAM's Grand Lodge, also called the International Union, is the governing body of the union between conventions, Its Executive Council consists of an International President ("IP"), General Secretary-Treasurer ("GST") and six General Vice Presidents ("GVP"). The officers are elected at large and have responsibility for different territories including Eastern, Southern, Midwest, Canada, Administrative and Transportation. The IAM's Constitution does not specify the territories to which GVPs will be assigned by the International President. However, since 1964, there has always been a GVP-Transportation, and that individual, once elected and assigned, was never transferred or removed from the position. The occupant of the General Vice President-Transportation position has never been involuntarily changed because the position requires experience in the transportation industry and the specialized system wide representation of members employed in the airline and railroad industries throughout the United States. In addition, airline and railroad carriers are governed by the Railway Labor Act, which issues a single certification for an entire airline or railroad system. During Pantoja's tenure as GVP-Transportation his Chief of Staff was Joseph Tiberi and his Airline Coordinator was Tim Klima. The IAM employs approximately 200 Grand Lodge Representatives (GLRs) the equivalent of union business agents, 14 of whom were assigned to the Transportation Department.

*Plaintiff Pantoja's Efforts to Remedy Corruption Involving Local and International Officers*

27) In 2017, GST Cervantes told Pantoja that certain members of Local Lodge 2198-, representing United Airlines ground personnel in Houston, within Pantoja's Department, were not paying membership dues. Pantoja ordered an audit and investigation of the Local's finances. Lodge 2198 is GST Cervantes' home Local and, at the time, her sister was its President. At the conclusion of the investigation, Pantoja furnished the IP and IAM General Counsel with a comprehensive report informing them that his staff had uncovered systematic embezzlement of approximately $100,000 of union funds by Local officers including Cervantes' sister, who signed every check, and that the theft of IAM members' dues money from Local Lodge 2198 was ongoing. He urged IP Martinez to place the Lodge under supervision to stop the embezzlement and filed a motion with the Executive Council to have it impose this remedy. GST Cervantes opposed supervision. Instead, she campaigned with GVP Brian Bryant, among other Executive Council members, to urge them to vote against taking any action, and claimed that Pantoja was engaged in a vendetta. The Defendants supported Cervantes and rejected Pantoja's motion.

28) Pantoja and his staff kept the Local 2198 membership informed about the investigation and its outcome. In July 2018, eight months after the results of the investigation were presented to the IAM's Executive Council and, after repeated complaints from Local 2198 members and officers that nothing had been done to remedy the breach of fiduciary responsibility that had been uncovered by the investigation and audit, Pantoja again demanded that the International take remedial action. Pantoja also provided additional evidence to the Executive Council that misappropriation of funds was still ongoing in the Local. In light of this information, the

Executive Council finally voted to impose supervision. As a result of Pantoja's actions, a Department of Labor investigation was initiated and some of the embezzled funds were repaid. Further, the Local acknowledged the embezzlement in its 2018 Form LM-2 filed with the Department of Labor which states:

> "In late March 2018 a Grand Lodge Auditor was assigned to conduct a full audit of Local Lodge 2198. As requested he examined the records of Local Lodge 2198 in Houston, TX. From January 2015 to March 2018 he confirmed a number of discrepancies that revealed a shortage attributable to Local Lodge 2198 former Secretary Treasurer Israel Valdivia in the amount of $85,863.90, former President Norma Ramirez in the amount of $13,101.44, and former Recording Secretary Idell McKinney in the amount of $2,341.69. The shortage was caused by a number of items including but not limited to overpayment (inflated) salaries, unauthorized reimbursements, personal meals without proof of union activity, overpayment of lost time, unauthorized lost time, double payments, per diem overpayment and missing receipts. The actions of these officers resulted in a shortage to Local Lodge 2198 totaling $101,307.03."

29) This was not the first time that the General Secretary-Treasurer ignored financial impropriety. On February 25, 2020, the former Secretary-Treasurer of Local Lodge 811, also in Houston, was indicted, found guilty, and sentenced for the misappropriation of between $20,000 and $100,000 of IAM dues dollars. GST Cervantes and her staff took no action at any time to discover or correct the illegal conduct at Local 811, which continued unabated until a criminal investigation was underway.

*GST Cervantes Embezzlement of IAM Funds*

30) Pantoja was made aware by IAM members and staff that GST Cervantes had been traveling to her Houston home on weekends, first class, at union expense, although she was domiciled in Maryland. In February of 2021, during the election campaign for Secretary Treasurer (discussed below), Pantoja requested five years of Cervantes' travel and expense records including her Weekly Expense Reports. After "good cause" was shown by Pantoja based on what he believed were excessive travel expenses on the IAM's LM-2 form filed with the

11

Department of Labor, a prolonged delay ensued, then about a month later he was reluctantly furnished with only a portion of the records he requested, as was IAM District Lodge 142 Secretary-Treasurer Ian Anderman, who had challenged GST Cervantes in the election of International Officers and had made a similar request. Inexplicably, 86 of the requested Weekly Expense Reports were improperly withheld. However, even the limited documents Pantoja received and provided to the DOL, reveal numerous incidents of fraud by GST Cervantes. For example, the records show that Cervantes repeatedly flew first class from her home in Maryland (at IAM expense), where the IAM is headquartered, to Houston, where her family resides, often on weekends without any valid union business justification. The IAM provided Cervantes with a stipend of approximately $30,000 to move from Houston to the Washington, DC area when she became GST. GST Cervantes also fraudulently obtained per diem expenses of nearly $100 per day for her travel time and personal stays in Houston and submitted mileage expense for use of her personal vehicle while there, although she conducted no official union business. In 2019 alone, she spent approximately 26 days in Houston. Based on Pantoja's review of the five years of those travel records it clearly appears that GST Cervantes visited Houston fifty times more than any other city where IAM members are located. Moreover, on numerous occasions, the reason given for her travel was blatantly false.

31) On her official Weekly Reports, GST Cervantes falsely claimed that she travelled to Houston for "training" and "meetings" with members of Local Lodge 2198 on weekends. Pantoja investigated this claim and found that no "training" or "meetings" had ever taken place at that Local on weekends. Specifically, GST Cervantes claimed to have performed "membership education" on Sunday, October 2, 2016, and Monday, October 3, 2016. However, no "membership education" ever took place on those dates. GST Cervantes then flew first class

back to Washington, DC charging the IAM $747.10 in airfare. Cervantes returned to Houston on Thursday, October 6, 2016, to attend a Local Lodge 2198 meeting.  She then spent the weekend in Houston on expenses claiming she was performing union business. For example, GST Cervantes claimed she performed "membership education" on Friday October 7, 2016, which did not occur. On Saturday, October 8, 2016, GST Cervantes claimed to have attended "AFL-CIO membership meetings," which also did not occur. On Monday, October 10, 2016, she remained in Houston and again claimed that the union business was fictitious "membership education." On Tuesday, October 11, 2016, she flew back to Washington, DC on union members' dues dollars. She charged IAM members a total of $2,714.03 in fraudulent first and business class airfares, per diem and personal car milage for her personal travel to Houston in October 2016 to hold fictional training meetings with members and "membership" meetings with the AFL-CIO.

32) Another instance of fraud occurred when Cervantes charged the IAM for her travel from Las Vegas to Houston in June 2019. On Sunday June 3, 2019, Cervantes travelled from her domicile in Upper Marlboro, MD to Las Vegas, NV to attend an IAM Communications Conference. However, on Friday, June 7, 2019, GST Cervantes charged the IAM for a one-way, first-class ticket on United Airlines from Las Vegas to Houston for $643.30. The reason given for the one-way trip to Houston on her Weekly Report was to attend an AFL-CIO meeting on June 8 which did not occur (Cervantes is not even an AFL-CIO delegate). GST Cervantes fraudulently charged IAM members for her first-class travel, $100 in per diem and $30.16 for personal milage for attending a meeting that did not take place. In all, Cervantes defrauded IAM members for a total of $773.46 from June 6-7, 2019, for a personal trip to Houston while claiming she was on union business.

13

33) Cervantes expense records further show that on Thursday, October 24, 2019, she traveled from Upper Marlboro, MD to Houston reportedly for "administration and traveling." In fact, she took a vacation day on Friday, October 25, 2019, then had the weekend off. On Monday, October 28, 2019, GST Cervantes improperly claimed $860.22 in expenses from IAM members for her vacation in Houston.

34) On Sunday, November 24, 2019, GST Cervantes traveled to Houston from Las Vegas, NV after attending the Guide Dogs of America fundraiser. She then took a vacation day on Monday, November 25, 2019. However, on Tuesday, November 26, 2019, she fraudulently stated that she attended a monthly Local Lodge 2198-member meeting. However, as the officers of Local Lodge 2198 will attest, there was no Local Lodge 2198 membership meeting on Tuesday, November 26, 2019. Local Lodge 2198 conducts its monthly union meeting on the first Thursday of every month, which occurred on November 7, 2019. Pantoja further verified with the President of Local Lodge 2198 that no Local meeting of any type took place on November 26.

35) On February 22, 2021 Pantoja requested, pursuant to Section 201(c) of the LMRDA, that the IAM provide the previous five years travel and expense records of IAM GST Dora Cervantes. He was asked by the General Counsel to provide "just cause" for his request which he did. He was then told by the General Counsel that, because the IAM was shorthanded and the documents he requested were in storage, there would be a delay. There was, in fact, a delay and no documents were provided until March 19, close to a month after they were requested. Pantoja was highly skeptical of the justification for the delay because he knew that the documents requested were maintained electronically.   During this delay the IAM had commissioned a cursory audit of the Cervantes records by the Calibre Company, which issued

14

a brief report finding that the Cervantes records were in compliance with DOL and IRS regulations. However, Calibre noted that this was not a "deep dive" or fraud audit. Accordingly, the reasons stated by Cervantes for her travel, and her claims that it was for union business, were taken as true without further inquiry or any requirement of corroboration. After Pantoja demanded to know whether any monies had been repaid by Cervantes as a result of the secret audit, the entire Executive Council was advised that Cervantes had reimbursed over $6,000 for falsely claiming that her leased vehicle, which she drives to and from her headquarters office, was used entirely for business purposes. (Exhibit A)

36) The expenditure of union resources for personal business is not limited to Cervantes. IP Martinez accepted a paid move to the Washington DC area, but often returned to his Dallas home for family visits and personal business such as doctors and dental appointments at union expense. On information and belief,  prior to the sale of the  IAM's private jet, many if not all of these trips were made using the IAM private airplane which was often parked at a Dallas airport, It is further alleged on information and belief that other Defendant members of the IAM Executive Council accepted a moving allowance of approximately $30,000 but similarly did not relocate their  home and family  but rather maintained their family residence and returned home on weekends  and on other occasions at union expense.

*Challenge to Dora Cervantes Candidacy*

37) As a result of what he believed to be serious and ongoing fraud and misappropriation of union funds by incumbent GST Dora Cervantes, as well as her active interference with his attempts to remedy ongoing embezzlement in her home local, Pantoja opposed her reelection as Secretary Treasurer and supported the candidacy of Ian Anderman, the Secretary-Treasurer of District Lodge 142, to replace her. Because he feared reprisals against himself and others

15

within his department before the campaign could get underway, Pantoja did not advise any of his fellow Grand Lodge officers of his decision to oppose Cervantes' reelection. The incumbent Grand Lodge officers were not aware until the nomination meetings on January 16, 2021 that Pantoja supported all incumbents with the exception of Dora Cervantes. He requested that the Locals under his supervision in the Transportation Department endorse the entire incumbent slate with the exception of Cervantes and urged them to nominate Ian Anderman for GST.

38) The IAM's election system requires the endorsement of 25 Locals before a candidate's name may be placed on the ballot for International office. A Local may only nominate one candidate for each International Officer position. If sufficient Locals nominate more than one person for an office there is a runoff, which in this case was conducted on April 24, 2021. Anderman received the endorsement of more than 80 Locals, all in the Transportation Department. Since the only contested position was for the office of GST, all other incumbents including Pantoja were considered elected without opposition.

*Closure of Transportation Department's Washington, DC Office on January 26, 2021*

39) Ten days after the nomination meeting in which Pantoja's support for the opponent of Dora Cervantes became known, by letter dated January 26, 2021, IP Martinez advised Pantoja that the Transportation Department's Washington, DC office in the AFL-CIO building was to be closed allegedly due to deep budget cuts.(Exhibit B) The office was important to the functioning of the Transportation Department because of its proximity to the National Mediation Board, which conducts "major dispute" negotiations for airlines and railroads, and as a meeting place to prepare for direct negotiations with carriers. Accordingly, District Lodges

141 and 142 (the two largest locals in the Transportation Department) volunteered to pay the rent for the space rather than lose it.

40) Two days later on Thursday, January 28, 2021, Pantoja's Chief of Staff Joe Tiberi was told by IAM Resident GVP Brian Bryant that the International President wanted to meet with him the next day. During the virtual meeting, Tiberi learned that IP Martinez was not going to show up and the meeting would be between him, GVP Brian Bryant and General Counsel Carla Siegel. Tiberi was then told that as Chief of Staff of the Transportation Department he should have reported to the IP that local lodges in the Transportation Department were voting to nominate Ian Anderman for GST. Following the meeting, on January 29, 2021, a letter was issued, signed by IP Martinez, demoting and reassigning Tiberi to the Communications Department (where he began his career) and reducing his salary by over $40,000. The letter said he was incompetent and disloyal. (Exhibit C)

*Threatened Loyalty Interrogations of Grand Lodge Representatives*

41) By letter dated February 8, 2021, IP Martinez advised all GLRs that loyalty interrogations would be conducted to determine whether any supported the challenger to the incumbent Dora Cervantes. He stated "…GLR's and SR's are required to remain loyal to the IP and work with me to implement my administration's policies and agenda. This includes my ability to work with the incumbent GST to continue the great work we have achieved to date…" He threatened that if the allegations of their opposition to Cervantes were true, he would consider it to be a "serious breach of a GLR's/SR's duties and each case will be dealt with according to the facts." (Exhibit D)

42) The GLRs and SRs (Special Representatives) are represented by an in-house Association. In an email the most senior GLR William Rody wrote to Martinez in response to his threat and stated in part:

> "Dear Sir, I am writing in response to your letter to myself and all other GRLs and SRs advising that we are being investigated and may be punished for perceived disloyalty. First, none of us have been disloyal to you. Second, we believe that your letter shows that you and the President of our Association, Richard Johnsen, have a clear conflict of interest and have met and conspired against us. It is apparent that at your direction the President of our union has monitored our activities and reported them to you in violation of his duty of fair representation. Immediately following your threatening letter to all of us, as a reward for his misrepresentation of us, you promoted him to Special Assistant to the President. This is further proof that you and Richard Johnsen have together conspired to dominate our union and violate the duty of fair representation. You have invited us in your letter to have our union representative present during your planned interrogation of us, although you know full well our union is dominated by you and its President, having a conflict of interest. Accordingly, be advised that I intend to file litigation against you, Richard Johnsen, and the Reps Association for employer domination and breach of the duty of fair representation in the appropriate forum. (Exhibit E)"

*The Election Campaign*

43) Ian Anderman waged an open and aggressive campaign against Dora Cervantes. Her website *Ian4IAMGST* included articles from Bloomberg Law detailing Cervantes covering up her sister's misdeeds. After Pantoja and Anderman received Cervantes' travel records disclosing her improper use of union funds they were published on the website as well. The Defendants in this action supported Cervantes and criticized Pantoja on their website for not disclosing his support for Anderman earlier. (Exhibit F) IP Martinez, Cervantes, and several of the named GVPs, their staff and surrogates including Defendant Richard Johnsen began calling District Lodge and local officers to tell them that Pantoja would be removed from his position as GVP-Transportation if the campaign continued. Pantoja was told in an email from GVP Brian

Bryant, IP Martinez's right-hand man, that what he was doing would "cost the lives" of IAM members and would cost the union a fortune. Pantoja strenuously disagreed and sent a response making clear that a contested and democratic election would benefit the IAM, and that Bryant and the Cervantes campaign was "…playing hide the ball to make it as difficult as possible for democratic participation in the nomination process…is exactly what the membership resents." (Exhibit G) Pantoja was called by GVP Gary Allen and told that it was not too late to call off the campaign.  President and Directing General Chair (PDGC) Mike Perry of Railroad District Lodge 19 was called by a surrogate of the Cervantes campaign, the former PDGC for the District Lodge, and told that if he did not support Cervantes he would suffer consequences "and would be gone".

44) Only one of the offices in the International Union's 2021 officer election was contested: The challenge to incumbent Secretary Treasurer Cervantes. It was a hybrid in-person and mail ballot election begun on April 24 with a final count conducted on May 7. Anderman lost to Cervantes by approximately 5,000 to 3,000. Anderman filed a protest of the election with the DOL. The two prior IAM International Officer elections have been overturned by the DOL.

*Pantoja's Retaliatory Removal*

45) By letter from IP Martinez dated June 1, 2021(Exhibit H), Pantoja was advised that the majority of the Executive Council voted that they no longer trusted him "in a position dealing directly with the members, staff and the upcoming negotiations." The alleged distrust of Pantoja was based entirely on his exercise of free speech in condemning corruption at the highest level of the union, not on Pantoja's performance. None of the named Defendants have organized as many new members or achieved more industry leading contracts than GVP Pantoja. Nonetheless, in the Martinez letter, Pantoja was told to immediately leave the IAM

19

headquarters building and that he was assigned to work at his home to "investigate and report" on how the union might develop or foster High School vocation and technical training programs, a position IP Martinez contended Pantoja was qualified for because "he graduated High School." That same day all Grand Lodge Representatives and Special Representatives were advised by letter that Pantoja would no longer head the Transportation Department but would be replaced by the IP's appointed and recently promoted Chief of Staff Richard Johnsen. (Exhibit I). Defendant Johnsen is the first unelected IAM member to head the IAM Transportation Department in its entire history.

46) Defendant Johnsen had been a GLR in Pantoja's department and head of the IAM Representatives Association, a labor organization representing GLRs. The day after Martinez removed Joe Tiberi from his position as Pantoja's Chief of Staff, Johnsen relinquished his office with the Representatives Association and was elevated to Special Assistant to the President. He was also placed in a leadership role in the Cervantes campaign

47) In sum, Defendants removed Pantoja from all of his official duties within the IAM and from his IAM appointments to external bodies, excluded him from all official union functions, and removed his chief of staff. These actions were part of a plan developed among the Defendant Executive Council members and Defendant Richard Johnsen, led by IP Martinez and GST Cervantes to violate Pantoja's rights under the LMRDA, humiliate him, and intimidate IAM members who supported him.

48) The actions alleged in the preceding paragraph occurred in secret meetings of the IAM Executive Council, from which Pantoja was excluded, despite his right under the IAM Constitution, as an elected GVP, to be a full participant in all meetings of the Council.

49) On June 17, 2021 IAM International President Martinez sent out a Memorandum to all Executive Council members stating that the Council had voted to approve a to require mandatory retirement of Executive Council members at age 65. (Exhibit J) The Memorandum states that this new policy was simply a codification of a purported long term "gentleman's agreement" that Council members would retire upon reaching Age 65.

50) The new rule changed the qualifications for union office prescribed in the IAM Constitution and was never approved by the membership. The change was clearly aimed at Pantoja who will turn 65 on March 28, 2022. The new policy deprives him and the membership which elected him to a four-year term of over three years of his service.

51) There was no lawful Executive Council meeting to discuss the new mandatory age 65 retirement rule. Instead, secret meetings among the Defendants were held and an email vote on the resolution was taken. Since he announced his opposition to Cervantes, Pantoja has been ostracized and excluded from all Executive Council meetings and was even barred from the swearing in of officers in early July of 2021. The circumstances surrounding the enactment of this new rule, including the exclusion of Pantoja from all union functions, make clear the Defendants schemed to isolate and marginalize Pantoja and ultimately run him out of the union simply because he opposed Cervantes and demanded that she and others be held accountable for mishandling membership funds. Under Article III, Section 3 of the IAM Constitution the only qualifications for office are that the candidates "…must be members who are and have been in continuous good standing for at least 5 years immediately prior to their nomination…[and that] No incumbent or non-incumbent candidate for an elected G.L. office will be eligible to seek such office if by reason of age he/she would not be able to serve at least 2 full years of such term before he/she would be required to retire." By imposing the *ex post*

21

*facto* requirement that all officers to be younger than age 65 the Defendants not only prevented Pantoja from serving out the full-term that he was elected to but have also added a requirement that was not previously in the IAM Constitution. This was obviously a new requirement for eligibility because Pantoja was allowed to run for a new term in 2021 despite the fact that he was going turn 65 in 2022 notwithstanding Article III, Section 3 of the IAM Constitution.

52) Plaintiffs Tusa and Walsh are rank and file IAM members who reasonably believed, based on unbroken union history, that Pantoja's reelection would assure that he would continue as the GVP-Transportation and continue to protect the interests of Transportation members by delivering industry-leading contracts and serving as their representative in dealing with their employers, for a full four-year term. His removal shocked them both and effectively nullified their votes

53) Plaintiffs Tusa and Walsh campaigned, in the recent election of IAM officers, for Ian Anderman and against incumbent GST Dora Cervantes, because they believed it was their legally protected right to do so and because GVP Pantoja had publicly denounced Cervantes' corruption.

54) Tusa is a member of Cervantes' home Local 2198 and was thus a victim of Cervantes' sister's embezzlement of Local Lodge funds, while GST Cervantes looked the other way

55) The reprisals taken against Pantoja after the election have caused Plaintiffs Tusa and Walsh to fear that reprisals may be taken directly against them and their local lodges because they openly opposed Cervantes.

## V.    DEFENDANT'S LIABILITY UNDER THE LMRDA

### COUNT I

### Violations of LMRDA Free Speech and Equal Voting Rights

56) Plaintiffs incorporate by reference into this Count all of the allegations in paragraphs 1-55 of this Verified Complaint.

57) The LMRDA's Title I, the "Bill of Rights for Union Members," 29 U.S.C. § § 411(a)(1) and (2), ensure the right of members to hear and have the benefits of their lawfully elected General Vice President Sito Pantoja's efforts to inform members he represented of wrongdoing by other union officers and of his efforts to investigate and obtain appropriate remedial action against that wrongdoing.

58) By removing Plaintiff Pantoja from his position as Vice-President of the IAM Transportation Department, isolating him from his transportation membership, preventing him from performing the union job that his members elected him to perform, purging his staff, and preventing him from participating in Executive Council meetings and other union functions that he was elected to perform, were clearly done in retaliation for his expressed opposition to the reelection of GST Cervantes and his efforts to expose her cover-up and failure to prosecute her sister's unlawful misappropriations of union funds, Defendants reprisals violated the LMRDA rights of Plaintiff Pantoja to express his opinions regarding pertinent union business, the handling of Union finances and the dishonesty of candidates for union office protected by 29 U.S.C. §§ 411(a)(2).

59) Defendants individually and collectively engaged in a comprehensive campaign to suppress Pantoja's dissent and efforts to remediate the wrongdoing of other Union officers, who happened to be allied with IP Martinez, in violation of 29 U.S.C. §§ 411(a)(2).

23

60) By removing Plaintiff Pantoja from his position as GVP-Transportation after he was overwhelmingly re-elected by the membership of the Department and replacing him with an unelected employee with grossly insufficient experience in the negotiation and administration of airline and rail agreements, the Defendants deprived the membership of their duly and lawfully elected GVP and Transportation Department leader, to their significant detriment, in violation of members' LMRDA equal voting rights to receive a full term of office from the candidate they elected to represent them, in violation of their equal voting rights under 29 U.S.C. § 411(a)(1).

61) By punishing Pantoja by removing him from his position as GVP-Transportation, purging his staff, and preventing him from participating in Executive Council meetings as a lawfully elected General Vice-President, the Defendants have intentionally chilled the rights of all IAM members, including Plaintiffs Tusa and Walsh, to seek redress for legitimate grievances over the criminal mishandling of union finances, as set forth above, in violation of LMRDA 29 U.S.C. §§ 411(a) (1), (2).

## COUNT II

### The Imposition of the Mandatory Retirement Rule

62) Plaintiffs incorporate by reference into this Count all of the allegations in paragraphs 1-61 of this Verified Complaint.

63) By imposing mandatory retirement at age 65 in June of 2021, a rule not stated in the IAM Constitution, after Pantoja's election to a four year term as General Vice President without a vote of the membership or even at a convened meeting of the IAM Executive Council in which Pantoja could have participated, the Defendants violated the Plaintiffs' rights under 29 U.S.C. § 411(a)(2) by cutting short the four-year term Pantoja was elected to by more than three years

24

by requiring him to retire on his 65th birthday on March 28 2022, and depriving the members who elected him of three years of his service.

## COUNT III

### The Failure To Provide Requested Union Financial Records To Which Plaintiff Pantoja Was Entitled To Under Section 201 Of The LMRDA

64) Plaintiffs incorporate by reference into this Count all of the allegations in paragraphs 1-63 of this Verified Complaint.

65) On February 22, 2021, Plaintiff Pantoja requested five years of Defendant Cervantes' travel related expense records supporting the IAM's LM-2 report to the Department of Labor and showed just cause for his request., However, after nearly a month's delay he was only furnished with a portion of the requested records with 85 of Cervantes' weekly expense reports withheld by Defendants. The Defendants' failure to provide the requested records in full was in direct violation of 29 U.S.C. § 201(b) of the LMRDA, 29 USC Section 431(b) which requires that every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the  information in such detail as may be necessary accurately to disclose its financial condition and operations including "…salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer…", and entitling union members to "…the information required to be contained in such report…" 29 USC Section 431(b) 5, and (c).

## VI.    PRAYER FOR RELIEF

66) WHEREFORE, the Plaintiffs demand judgement against the Defendants, jointly and severally, on all counts, and requests that the Court award him the following requested relief:

    a.  A preliminary and permanent injunction fully restoring Plaintiff Pantoja to his position as GVP-Transportation and his staff to the positions they held prior to Defendants acts of unlawful retaliation including Pantoja's removal as GVP Transportation  on June 1, 2021.

    b.  A preliminary and permanent injunction requiring the Defendants to allow Plaintiff Pantoja to fulfill all of his duties as an elected GVP pursuant to the IAM Constitution including but not limited to full participation in all Executive Council meetings and in all Union functions related to his position as General Vice-President pursuant to the IAM Constitution.

    c.  A preliminary and permanent injunction requiring the Defendants to produce all financial records requested by Plaintiff Pantoja on February 22, 2021, pursuant to Section 201 of the LMRDA.

    d.  Compensatory damages to include damage for loss of reputation of Plaintiff Pantoja.

    e.  Punitive or exemplary damages against the named Defendants in their individual capacities to punish the defendants for engaging in the willful and wanton disregard of Plaintiff Pantoja's rights and the rights of the IAM members he represented.

    f.  Reasonable attorney's fees and costs incurred in this action.

    g.  Such other damages and relief as this court finds just and equitable.

Dated:  August 17, 2021

Respectfully Submitted,

Kalbian Hagerty LLP

/s/ Stephen C. Leckar
STEPHEN C. LECKAR, DC Bar No. 281691
888 17th Street, N.W., Suite 1200
Washington, D.C. 20006
Tel: (202) 223-5600
Fax: (202) 223-6625
sleckar@kalbianhagerty.com

*Attorney for Plaintiffs*

Michelle B. Owens, BPR 026512
(*Motion Pro Hac Vice Pending*)
Agee Owens & Cooper
2911 Elm Hill Pike, Suite 2
Nashville, TN 37024
Phone (615) 300-8546
Fax (615) 369-8724
mowens@ageeowenslaw.com

*Attorney for Plaintiffs*

**VERIFICATION**

I, Sito Pantoja, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof to be true, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

_____
Sito Pantoja

**Demand for Trial By Jury**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable in the above-captioned action.

---------------------------------------

28

## Certificate of Service

I certify that I caused a copy of the foregoing to be served this 17th day of August 2021 by ECF on counsel for Defendant:

Carla M. Siegel, DC Bar No. 449953
Int'l Association of Machinists and Aerospace Workers
9000 Machinists Place
Upper Marlboro, MD 20772
Tel: (301) 967-4500
csiegel@iamaw.org

*Attorney for Defendant Int'l Association of Machinists (IAM) AFL-CIO*


*/s/ Stephen C. Leckar*
STEPHEN C. LECKAR

29